**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re BLUE RIDGE PASSAGE RESORT, INC., | ) Case No. 05-60936-LYN |
| Debtor, | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the court on an objection to the secured status of the claim of Lauren E. Haywood ("Haywood"). The objection will be overruled.

### *Jurisdiction*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(A). This Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

### *Facts*

The Debtor is a real property developer in Virginia. Sharroll D. Shumate ("Mr. Shumate") is the founder of the Debtor. Mr. Belcher was the president of the Debtor. A dispute arose between Mr. Shumate and Mr. Belcher and other parties that resulted in litigation in the Circuit Court for the County of Patrick. While that litigation was pending, the Debtor filed a bankruptcy petition initiating the above-styled case.

The parties eventually entered into a global settlement. On September 28, 2005, the Debtor filed a motion to authorize post-petition secured credit ("the Motion to Authorize Post Petition

Credit").[1] Also on September 25, 2005, the parties filed a joint motion for entry of order approving settlement ("the Original Motion Approving Settlement"). Attached thereto was a Stipulation and Consent Order Approving Compromise ("the Original Settlement Agreement"). The Motion to Authorized Post Petition Credit was granted by order ("the Order Granting Motion to Incur Debt").[2]

The Original Settlement Agreement provided that Mr. Belcher, Nancy Thomas Henley and Signature Construction Company (collectively "the Belcher Group") would be allowed an administrative claim in the amount of $700,000.00. The Debtor made the payment to the Belcher Group. Ms. Henley and Signature Construction Company were paid in full from those proceeds. Mr. Belcher was paid in part and was allowed a secured claim in the amount of $1,300,000.00 which was secured by the Debtor's property which was evidenced by a promissory note and deed of trust (collectively "the Belcher Note").

The Original Settlement Agreement also authorized the Debtor to borrow up to $1,700,00.00, which would give rise to debt that would be senior in priority to the Belcher Note. The Original Settlement Agreement specifically permitted the Debtor to borrow $700,000.00 from William Webb to fund the cash payment to the Belcher Group. The debt owed to Mr. Webb would constitute part of the $1,700,000.00 and would be senior in priority to the Belcher Note. An order permitting the Debtor to incur debt was entered on docket on October 31, 2005.

Mr. Webb declined to loan the Debtor the $700,000.00. Subsequently, the parties entered into a modified settlement agreement ("the Modified Settlement Agreement"). The Modified Settlement Agreement modified ¶ 4.2(I)-(iii) of the Original Settlement Agreement. The remainder

---

[1]  Entered on docket as docket no. 101.

[2]  Entered on docket as docket no. 118.

of the Original Settlement Agreement was left unchanged. The modification provided in relevant part that:

> . . . the Debtor and Shumate shall . . . grant Belcher a lien on the Real Property, *which lien Belcher agrees to subordinate to other liens* in an aggregate face amount of up to $1,7000,000.00, which amount includes, but is not limited to (1) existing liens on the Real property that will be superior to Belcher's deed by virtue of prior recordation, (2) the Purchase Agreements [for cabins on the Real Property], and (3) *any other liens to individuals or entities identified by Shumate or Debtor;*

Joint Motion for Entry of Order Approving Modified Settlement, ¶ 16, Docket no. 145, and Order Approving Modified Settlement, Docket no. 146 (Emphasis added.).

The case was converted to Chapter 7 on November 20, 2009. On December 25, 2009, the Chapter 7 trustee served a notice to file claims on the creditors. In response, Haywood filed a secured claim ("the Haywood Claim") based on a loan ("the Haywood Loan") made to the Debtor on February 6, 2006.[3] The Haywood Loan is memorialized in a note and deed of trust (collectively "the Haywood Note"). Mr. Belcher objects to the secured status of the Haywood Claim.

## *Discussion*

The objection is based on two arguments: (1) the amount of the claim causes the total amount of money loaned under the Settlement Agreements to exceed $700,000.00; and (2) Haywood did not record the deed of trust.

Mr. Belcher asserts that the amount of the claim causes the total amount of money loaned under the Settlement Agreements to exceed $700,000.00. He states that "the $700,000.00 in financing has been 'Spoken for' by other individuals." First, the Modified Settlement Agreement does not limit the amount that the Debtor may borrow from "any other liens to individuals or entities

---

[3] Ms. Haywood also filed another claim based on a separate $100,000.00 loan. Mr. Belcher does not object to the claim based on that loan.

3

identified by Shumate or Debtor . . .". Rather, it limits to $1,700,000.00 the total amount of three loan types: "(1) existing liens on the Real property that will be superior to Belcher's deed by virtue of prior recordation, (2) the Purchase Agreements [for cabins on the Real Property], and (3) any other liens to individuals or entities identified by Shumate or Debtor".

It was agreed by all of the other parties at the hearing on this matter that, under the Original Settlement Agreement, the Debtor would be permitted to borrow $700,000.00 to fund the payment to the Belcher Group. At the hearing, the Chapter 7 trustee and counsel for Haywood as well as counsel for another claimant all asserted that this amount was increased to $800,000.00 under the Modified Settlement Agreement to permit the Debtor to pay some administrative expenses. Further, the Loan Agreement form attached to the motion to modify the Original Settlement Agreement indicates that the Debtor was to borrow a total of up to $800,000.00.

Mr. Belcher pointed to no evidence in the record concerning the limit of the amount that the Debtor could borrow that would give rise to "other liens to individuals or entities identified by Shumate or [the] Debtor". The objection cannot be sustained on the basis of this argument.

Mr. Belcher also argues that the post-petition lenders who have not recorded a deed of trust with the Clerk of the Circuit Court of Patrick County are not secured lienholders who are entitled to take precedence over Mr. Belcher's claim.

At the hearing on this matter, Mr. Belcher argued as follows:

If the persons who are now claiming a secured interest in this property over Mr. Belcher do not have recorded Deeds of Trust, they do not have liens on this property. Simple real estate transaction, if you don't have a Deed of Trust or a judgment that's recorded in the Circuit Court Clerk's office, you don't have a secured lien. If you don't have a secured lien, you can't take priority over other secured liens.[4]

---

[4] Hr'g Tr., p. 16 September 8, 2010.

The assertion that one is required to record a deed of trust in order to have a lien on real property is not correct. If a lender and borrower properly execute a note and deed of trust, then the lender will have a lien on the property as against the borrower. That lien might be avoidable by third parties, but the fact that the creditor has not recorded the deed of trust does not mean that the lien is void as against the borrower.

In this case, the lien created by Haywood's deed of trust is not avoidable, either by Mr. Belcher or by the Chapter 7 trustee. It is not avoidable by Mr. Belcher because he is a party to its creation and is, consequently, estopped from arguing that it is void by virtue of the fact that it is not recorded. It is not avoidable by the chapter 7 trustee because the trustee's avoidance powers arise as of the date of petition and the deed of trust was executed pursuant to an order of this court post-petition.

Additionally, it is clear that it was the intent of the parties, including Mr. Belcher, that the post-petition lenders such as Haywood did not have to record the deed of trust. The order of this court lodged by the parties that approved the initial post-petition financing agreement provides that:

> The Post-Petition Lender shall not be required to file or record financing statements, notices of lien or similar instruments in any jurisdiction, execute security agreements or take any other action in order to validate and perfect the security interests and liens granted to it pursuant to this Order. If the Post-Petition Lender shall, in its sole discretion, choose to file such financing statements, notices of lien or similar instruments, it is authorized to do so and all such documents shall be deemed to have been filed or recorded at the time and on the date of the entry of this Order.

Order Approving Post-Petition Financing, entered on docket on October 31, 2005, ¶13. The order was executed by Mr. Belcher's counsel. This argument does not provide a basis to sustain the objection.

The Haywood Claim will be allowed as a secured claim.

**ORDER**

The claim of Lauren E. Haywood shall be and hereby is allowed as a secured claim.

So ORDERED.

Upon entry of this Order the Clerk shall forward a copy to Lauren E. Haywood, James E. Cornwell, Jr., Esq., George A. McLean, Esq., John D. McIntyre, Esq., William A. Gray, Esq., and the Chapter 7 trustee.

Entered on this  1st  day of November, 2010.

_____
William E. Anderson
United States Bankruptcy Judge